24063

The CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Respondent v. John F. LANFORD, William N. Geiger, Michael B. McKeithen, Mark M. King, Edward W. Pike, Jr., Dennis R. Gerwing, and Oscar S. Wooten, Defendants, of whom William N. Geiger is Appellant.

(443 S.E. (2d) 549)

Supreme Court

---

*A. Camden Lewis, of Lewis, Babcock & Hawkins,* Columbia, *for appellant.*

*John T. Moore* and *Steven A. McKelvey,* both of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard Jan. 6, 1994.

Decided May 9, 1994. Reh. Den. June 7, 1994

FINNEY, Justice:

This case arises from an action to enforce guaranty obligations under a Note and Guaranty of Payments. The circuit court awarded judgment to respondent, The Citizens and Southern National Bank (C&S), against appellant William N. Geiger for the full amount of the primary debt, plus interest and attorneys' fees.

On January 14, 1988, Timberlake Plantation Company (Timberlake), through its representatives, executed a note in the amount of $185,000 to be paid in monthly installments over ten years to C&S. The note contained a Guaranty of Payment bearing the undisputed signatures of John F. Lanford, Michael B. McKeithen, Mark M. King, Dennis R. Gerwing, Oscar S. Wooten, Edward W. Pike, Jr., and William N. Geiger. The note was secured by a mortgage on certain property owned by Timberlake. Subsequently, Timberlake filed for Chapter 11 bankruptcy, and C&S demanded payment from the guarantors. After being awarded judgment against McKeithen, King, Gerwing, Wooten and Pike, C&S moved for summary judgment against Geiger based upon the following terms of the Guaranty of Payment:

> For value received, the undersigned *(who if two or more in number, shall be jointly and severally liable hereunder) hereby unconditionally guarantee(s) the payment of this Note and all extensions or renewals thereof,* and all expenses . . . *any of whom may be sued by the holder hereof with or without joining any of the other endorsers or makers of this Note and without first or contemporaneously suing such other persons, or otherwise seeking or proceeding to collect from them.* (Emphasis added.)

The trial court granted summary judgment in favor of C&S for $193,341.79, the entire amount of the note, holding that Geiger was bound by the unconditional guaranty.

Geiger appeals on the ground that certain actions and omissions of C&S give rise to issues of material fact which preclude summary judgment. He contends he is entitled to assert defenses under S.C. Code Ann. § 36-3-606 (1976) relating to C&S's alleged impairment of the collateral. Geiger also claims summary judgment is inappropriate because he is entitled to litigate whether he is entitled to Appraisal Statute protection. Finally, he contends the trial court erred in awarding C&S summary judgment on his negligence counterclaim. We affirm.

A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity. *AMA Management Corp. v. Strasburger,* — S.C. —, 420 S.E. (2d) 868 (Ct. App. 1992). Under an absolute guaranty of payment, the creditor may maintain an action against the guarantor immediately upon default of the debtor. *Peoples Federal S&L v. Myrtle Beach Retirement Group,* 300 S.C. 277, 387 S.E. (2d) 672 (1989).

We find that on its face, the guaranty agreement establishes the existence of an absolute guaranty of payment. Moreover, the record reflects no actions or omissions on the part of C&S in contravention of the clear language of the guaranty agreement. No obligation was imposed upon C&S, as Geiger insists, to pursue and/or exhaust the collateral. The guaranty agreement unambiguously places all guarantors, jointly and severally, under liability for 100% of the contract debt. The intention of the parties, as expressed in the guaranty, should guide the court. *Peoples Federal S&L, supra.*

Geiger's contention that the case involves issues of material facts is predicated on his assertion that C&S unjustifiably impaired the collateral. He argues that since the guaranty and note are contained on the same sheet of paper, and the note is a negotiable instrument, a signor of the guaranty becomes a "party to the instrument" and is entitled to assert defenses available to such a party.[1] We disagree.

The general rule in South Carolina, as noted in *Rock Hill Nat'l Bank v. Honeycutt*, 289 S.C. 98, 344 S.E. (2d) 875 (Ct. App. 1986), is that a guaranty of payment is an obligation separate and distinct for the original note. This point is elucidated in 38 Am. Jur. (2d), *Guaranty*, § 4, which states:

> The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral. The fact that both contracts are written on the same paper or instrument does not affect the independence or separateness of one from the other.

*See also Robey v. Walton Lumber Co.*, 17 Wash. (2d) 242, 135 P. (2d) 95 (1943); *New Medico Assoc., Inc. v. Snadon*, 855 S.W. (2d) 489 (Mo. Ct. App. 1993).

We adhere to the principle that the guaranty of payment and the promissory note are two separate contracts. We conclude that Geiger is not a party to the note and cannot avail himself of defenses based on impairment of collateral under S.C. Code Ann. § 36-3-606 (1976).

Geiger's reliance on the Appraisal Statute is similarly misplaced since its application is limited to real estate foreclosure actions. S.C. Code Ann. § 29-3-680 (1991). Summary judgment on this claim was appropriate.

Finally, Geiger contends that summary judgment was improperly granted on his counterclaim because C&S was negligent when its loan officer failed to explain

---

[1] He does not assert the guaranty alone is a negotiable instrument.

that under the guaranty agreement Geiger would be personally liable for the entire amount. He contends he thought he would only be liable for one seventh of the total since there were seven guarantors. Geiger asserts an internal C&S policy manual created a duty on the part of the officer to explain the guaranty.

■ The law does not impose a duty on the bank to explain to an individual what he could learn from simply reading the document. *Burwell v. South Carolina National Bank*, 288 S.C. 34, 340 S.E. (2d) 786 (1986); *PPG Industries, Inc. v. Orangeburg Paint & Decorating Center*, 297 S.C. 176, 375 S.E. (2d) 331 (Ct. App. 1988). In this case, the guaranty agreement clearly states each guarantor's potential liability for the entire amount. The manual instructs the loan officer to consider certain factors, including "does the guarantor realize what he is guaranteeing?" in determining whether to accept the guarantor. We agree with the trial judge that the manual here created no duty in the loan officer to ensure Geiger's understanding of the guaranty agreement. *Cf., Burwell, supra* ("The normal bank-depositor arrangement creates a creditor-debtor relationship rather than a fiduciary one").

■ Summary judgment is appropriate when it is clear that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Smith v. T. H. Snipes & Sons, Inc.*, 306 S.C. 289, 411 S.E. (2d) 439 (1991); *Cafe Assoc., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). We conclude that no genuine issue of material fact exists in this case and that C&S is entitled to summary judgment as a matter of law. Accordingly, the judgment of the trial court is

Affirmed.

CHANDLER, Acting C.J., TOAL and MOORE, JJ., and C. TOLBERT GOOLSBY, Jr., Acting Associate Justice, concur.